IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. BANK ASSOCIATION AS TRUSTEE FOR THE REGISTERED HOLDERS OF ABFC 2007-WMC1 TRUST ASSET BACKED FUNDING CORPORATION ASSET BACKED CERTIFICATES, SERIES 2007-WMC1,<br><br>    Plaintiff,<br><br>    v.<br><br>BENJAMIN J. JOHNSON, CAPITAL ONE BANK (USA) N.A. SUCCESSOR IN INTEREST TO CAPITAL ONE BANK, CHICAGO COMMERCE ACCEPTANCE CORP., MIDLAND CREDIT MANAGEMENT, INC., and SEARS, ROEBUCK and COMPANY,<br><br>    Defendants. | No. 11 C 5369 |

**MEMORANDUM OPINION AND ORDER**

Plaintiff U.S. Bank National Association ("U.S. Bank") filed suit against Benjamin J. Johnson, Capital One Bank (USA) N.A. Successor in interest to Capital One Bank, Chicago Commerce Acceptance Corp., Midland Credit Management, Inc., and Sears Roebuck and Company arguing that Johnson was in default on his mortgage. Plaintiff has now filed a motion for summary judgment and Johnson filed a *pro se* response. For all the reasons given below, plaintiff's motion is granted.

On or about January 23, 2007, GE Money Bank ("GE") lent Johnson approximately $218,500 in order to purchase a home in Chicago, IL. Johnson executed a Note in favor of GE in exchange for receiving this money, and Johnson agreed to pay 7.620 percent in interest at

a yearly rate.  Johnson also agreed to pay taxes, insurance and any other escrow items that may apply.  He further agreed to make monthly payments on the first day of every month in the amount of $1,545.78.  MERS, Inc., as nominee for GE, secured its interests in the Note by filing a Mortgage with the Cook County Recorder on May 7, 2007.  On or about November 16, 2009, MERS, Inc., as Nominee for GE, assigned its Mortgage to plaintiff.  Plaintiff then received all of GE's interests in the property pursuant to the Mortgage and Note.

Plaintiff argues that Johnson defaulted on his obligations under the Note and the Mortgage.  Relying on language in the Mortgage, plaintiff also states that it is entitled to attorney's fees, foreclosure costs, late charges, advances and expenses incurred as a result of the default.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once the moving party shows that there is no genuine issue of material fact, the burden of proof shifts to the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Plaintiff put forward an "affidavit of debt" from Denise Lundquist, a Contract Management Coordinator for Ocwen Loan Servicing, LLC.  In her affidavit, Lundquist avers that Johnson owes $209,525.00 in principal, $3,198.97 in escrow for taxes, $231.72 in

late charges, $10,032.93 in unpaid interest from 2/1/11 to 9/18/11 (and at the rate of $44.03 per day thereafter), $1,398.42 in reimbursable advances, expenses and costs, and reasonable attorney's fees. She also includes a 221.20 credit listed as "Miscellaneous credits." Thus, she arrives at a total indebtedness of $224,165.84, plus reasonable attorney's fees and costs, as of September 18, 2011.

Based on Johnson's responses to plaintiff's facts, his five additional facts and his affidavit, he appears to argue that he is not in default. In response to plaintiff's fact 11 which asserts that Johnson failed to make his monthly payment in October 2010, Johnson states, "Installment payments for principal and interest were posted to the mortgage account by Plaintiff's loan servicing representative, Ocwen Loan Servicing, LLC (Ocwen) on October 22, 2010, while taxes and insurance were not escrowed, and [were] paid separately by the Defendant." Resp. at 2.

Plaintiff, in reply, acknowledged that it made an error when it stated that no payments were made after October 2010. It nevertheless asserts that the "affidavit of debt" and summary judgment materials themselves reflect the actual amounts paid by Johnson. Plaintiff goes on to explain that, as reflected in the materials filed by Johnson, Johnson did not make his August or September 2010 payments. On October 22, 2010, Johnson made two payments, which were applied as August 2010 and September 2010 payments, with an overpayment of $154.48 that was placed in a

3

suspense account. As of October 25, 2010, therefore, Johnson had still not made the October 2010 payment, which was 25 days past due. Therefore, because Johnson has not pointed to any evidence to dispute this, it is undisputed that Johnson failed to make his October 2010 payment in a timely fashion.

Ocwen began advancing expenses on September 21, 2010 due to Johnson's default, including certified mail costs, and property inspection and valuation fees which totaled $143.96 by December 13, 2010. Those fees were included in Johnson's January 20, 2011 Account Statement. Johnson made four payments on January 19, 2011, bringing him almost current through January 2011, but then failed to make any payment in February 2011 and did not make another payment until March 28, 2011, leaving him owing $4,117.40 as of March 29, 2011. Neither party put forward any evidence that Johnson made any payments after March 28, 2011. The January 2011 and March 2011 Account Statements reflect proper reductions of principal and interest, leaving a principal balance of $209,525.00 as of the March 29, 2011 Account Statement. This principal amount was carried forward in the "affidavit of debt," which also includes a $3,183.97 escrow for a tax payment on June 3, 2011. Johnson puts forward no evidence that he himself paid the June 2011 tax bill. Therefore, plaintiff has put forward undisputed evidence that Johnson was in default as of March 28, 2011.

Johnson states that something improper occurred with respect

4

to his homeowner's insurance. Johnson's Mortgage required that he keep the property insured and name the Lender as an additional loss payee. It also provided that if he failed to maintain coverage the "Lender may obtain insurance coverage, at Lender's option and Borrower's expense." In the Mortgage, Johnson "acknowledge[d] that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could obtain" and that "[a]ny amounts disbursed by Lender [for insurance] shall become additional debt of Borrower" and "bear interest at the Note rate from the date of disbursement."

Plaintiff asserts that Johnson's homeowner's insurance expired February 21, 2010 and that he failed to renew it for the next year. As a result, on April 14, 2010, plaintiff's "affidavit of debt" from Ocwen shows that a payment of $2,307.00 was made on plaintiff's behalf for "Forced Hazard Insurance." Plaintiff goes on to explain that this amount was ultimately credited back to plaintiff's account in two payments. While plaintiff does not explain why this amount was credited back, it is consistent with Johnson's position that he was "erroneously billed" for insurance.

Even if Johnson had in fact paid his insurance premium and thus was improperly charged $2,307.00, he provides no explanation for how this impacted his later failure to make payments. Importantly, by October 2011, he had received a full credit to his account for the $2,307.00 payment. Thus, he cannot argue that he made all his

5

normal payments on time, and was merely behind because of the insurance mistake. In the end, I do not conclude that the issue of the insurance payment in any way negates plaintiff's default argument.

Finally, Johnson, in his affidavit, makes a number of quite general statements which are too ambiguous to be material. For example, he references "erroneous bill[ing]" related to "fees" and "improper credit[ing]" but gives no examples of what he is referring to. He also states that plaintiff and Ocwen engaged in "unfair business practices by prolonging conflicts, delaying resolution and providing questionable customer service practices." Unfortunately, I have no way of knowing what Johnson is referring to, as he provides no examples or further explanation.

Plaintiff's motion for summary judgment [19] is granted. Based on the "affidavit of debt," I find that Johnson's total indebtedness, as of September 18, 2011, is $224,165.84, plus $44.03 in interest per day thereafter. Plaintiff has requested $1,934.00 in attorney's fees and costs. Because plaintiff's attorney did not file an affidavit explaining how he arrived at this figure, I cannot determine if this amount is reasonable. Plaintiff is directed to submit an affidavit supporting its request of $1,934.99 by April 6, 2012. In addition, by April 6, 2012, plaintiff shall file on the docket a copy of its proposed Judgment of Foreclosure. Plaintiff should also provide my courtroom deputy with an electronic copy of

6

its proposed Judgment of Foreclosure.  Finally, plaintiff's motion to appoint The Judicial Sales Corporation as a Special Commissioner [22] is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 27, 2012